# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2824

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Patrick Lynn Walrath, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 10, 2002

Filed: April 3, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury convicted Patrick Lynn Walrath (Walrath) of being a felon in possession of an IMI mini Uzi 9mm rifle in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (2000). The district court[1] sentenced Walrath to seventy-two months imprisonment. Walrath appeals the conviction, arguing the district court erred by not viewing in camera a surveillance videotape, by allowing into evidence an inculpatory statement made by Walrath, and by prematurely giving the jury the Allen charge. Walrath also

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

argues the cumulative effect of these errors requires dismissal of the charges or retrial. We disagree and affirm.

## I.    BACKGROUND

Working with an informant, law enforcement officials set up surveillance of Walrath's mother's house. An investigator saw the informant and Walrath walk into the residence. After examining the IMI mini Uzi 9mm carbine rifle, the informant returned to the Sheriff's office for authorization to buy the weapon. The investigator again set up surveillance approximately seventy-five feet from the residence, but this time he videotaped the activity occurring outside the house from behind some bushes and trees. The officer saw the informant arrive and enter the residence. A second unidentified individual accompanied the informant into the residence. Inside, the informant purchased the weapon by giving $2000 to Walrath's mother. Walrath then gave the weapon and ammunition to the informant.

During trial, Walrath's parole officer advised the government for the first time that Walrath had undergone state parole revocation proceedings in April 2001 based on possession of an Uzi. The parole officer provided the government with three parole revocation documents: a violation report; a violation notice; and a hearing waiver form. The government provided the documents to defense counsel at 3:00 p.m. on January 23, 2002. A hearing on the admissibility of the documents was held the next morning. Over Walrath's objection, the district court admitted the documents into evidence, finding the government had not violated its duty to disclose, and the prejudicial effect of the documents did not substantially outweigh their probative value.

After deliberating for seven hours, the jury sent a note to the district court asking, if the jury could not come to a unanimous decision, what would be the next step. Based on the note, the district court read the jury a supplementary instruction describing the jury's duty to deliberate, the <u>Allen</u> charge. Just over an hour later, the

jury returned a guilty verdict. The district court sentenced Walrath to seventy-two months imprisonment. Walrath appeals his conviction.

## II. DISCUSSION

### A. Surveillance Videotape

Walrath argues the Assistant United States Attorney, rather than the district court, made the ultimate determination about the potential relevance of a surveillance videotape, in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). During a pretrial hearing, Walrath complained the government failed to release the videotape. The government indicated the content of the videotape was "pretty indistinguishable," but made the videotape available to the defendant. Walrath now contends the district court should have viewed the videotape in camera, although he did not at the time ask for an in camera review. Walrath argues the videotape "could have been useful to the defense as exculpatory evidence or for impeachment of government witnesses."

The government's interest is justice, not just winning. See Berger v. United States, 295 U.S. 78, 88 (1935). "[T]he prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment, a rule known as the Brady rule." Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000) (internal quotation omitted) (citing Brady, 373 U.S. at 87). "To establish a violation of Brady, a defendant must show that: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material." Dye, 208 F.3d at 665. A conviction will stand where a Brady violation was "not prejudicial and amount[s] to harmless error." Id. (citation omitted). A defendant fails to show the prosecution suppressed evidence when the defendant was aware of and had access to the evidence. See United States v. Zuazo, 243 F.3d 428, 431 & n.2 (8th Cir. 2001).

Walrath's argument fails on all three prongs. The videotape was not suppressed. Before trial, the videotape was acknowledged and made available to Walrath. He chose not to view it.

No evidence supports Walrath's conclusory assertion the videotape contains exculpatory or material evidence. By all accounts, the videotape depicts only the exterior of a residence and two people entering the residence. The videotape neither shows what happened inside the residence nor contributes anything pertinent as to whether or not Walrath possessed the weapon or whether he lacked criminal intent. Therefore, the district court did not err, and Walrath was not prejudiced by the events surrounding the videotape. See United States v. Pou, 953 F.2d 363, 366-67 (8th Cir. 1992) ("Mere speculation that a government file may contain Brady material is not sufficient to require a remand for in camera inspection, much less reversal for a new trial.").

## B. Inculpatory Statement

Walrath argues the district court abused its discretion by failing to exclude, as a discovery violation sanction, an earlier statement made by Walrath. The statement occurred at a "Waiver of Parole Revocation Hearing," characterized by Walrath as a plea bargain between him and state parole authorities. The waiver was based on the same allegations underlying the instant conviction and other allegations of parole violations. In the waiver, Walrath agreed to waive a hearing on the evidence and instead submit to revocation of his parole. The waiver, signed by Walrath,[2] states, "I admit that I have violated the following condition(s) of release as alleged: #4 Laws, #5 Weapons, #6 Alcohol/Controlled Substances."[3]

---

[2]Walrath submitted a handwritten letter to this court, claiming the signature on the waiver form is a forgery. We decline to address the argument, which was not raised before the district court or in Walrath's appeal brief or at oral argument. See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002) ("We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.").

[3]Another exhibit, not challenged on appeal, reported the violations as, Condition #4  LAWS  On January 19, 2001, WALRATH possessed a 9 mm UZI mini carbine rifle.

During trial Walrath objected to admission of the waiver into evidence, arguing the waiver had not been disclosed until after trial began and the waiver was more prejudicial than probative in violation of Federal Rule of Evidence 403. Neither the timing nor the effect of the waiver was unfairly prejudicial under the circumstances. The district court did not abuse its discretion in admitting the waiver into evidence. See United States v. Oleson, 310 F.3d 1085, 1091 (8th Cir. 2002) (standard of review).

### C. Allen Charge

Walrath contends the district court erred by prematurely reading the Allen charge to the jury. "An Allen-charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Glauning, 211 F.3d 1085, 1086 n.2 (8th Cir. 2000) (citing Allen v. United States, 164 U.S. 492 (1896)). We review a challenged jury instruction for abuse of discretion. United States v. Whitefeather, 275 F.3d 741, 742 (8th Cir. 2002). A district court may "issue supplemental instructions to the jury so long as the instruction is not impermissibly coercive. Jury coercion is determined by (1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion." United States v. Washington, 255 F.3d 483, 485-86 (8th Cir. 2001) (no coercion where jury deliberated over four hours before and forty-five minutes after the Allen charge, following a four-day trial).

Walrath's trial lasted less than two days. After seven hours of deliberation, the jury asked, "Your Honor, if, as a group having discussed all evidence and testimony,

---

Condition #5 WEAPONS On January 19, 2001, WALRATH possessed a 9 mm UZI mini carbine rifle.
Condition #6 ALCOHOL/CONTROLLED SUBSTANCES On April 6, 2001, WALRATH tested positive and admitted to the use of marijuana.

we cannot come to a unanimous decision, what is the next step?" In response to the question, and over Walrath's objection, the district court read to the jury the Eighth Circuit Model Criminal Jury Instruction 10.02, Duty to Deliberate. We approved the content of Model Instruction 10.02 for use as an <u>Allen</u> charge in <u>United States v. Thomas</u>, 946 F.2d 73, 76 (8th Cir. 1991).

The jury returned a guilty verdict one hour later. The jury deliberated for a total of eight hours. Taking into consideration the length of the trial and the degree of complexity of the case, we cannot say the total period of deliberation was so disproportionate as to raise an inference that the <u>Allen</u> charge coerced the jury. <u>See</u>, e.g., <u>United States v. Warfield</u>, 97 F.3d 1014, 1021-22 (8th Cir. 1996) (one hour of post-<u>Allen</u> charge deliberation raises no inference of coercion); <u>Thomas</u>, 946 F.2d at 76 (nine hours of total deliberation for two-day trial raises no inference of coercion); <u>United States v. Smith</u>, 635 F.2d 716, 720-22 (8th Cir. 1980) (four hours of total deliberation for two-day trial rendering verdict forty-five minutes after the <u>Allen</u> charge raises no inference of coercion). Nor do we find any indication of coercion in the record.

### D. Cumulative Effect

Finally, Walrath argues the cumulative effect of the above three incidents, if not errors in and of themselves, resulted in a deprivation of his constitutional rights. We acknowledge "[w]e may reverse where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." <u>United States v. Riddle</u>, 193 F.3d 995, 998 (8th Cir. 1999). However, the alleged errors in this case, individually and cumulatively, do not warrant reversal because they do not present an image of unfairness.

## III.  CONCLUSION

Because we find no abuse of discretion or error in the district court's admission of evidence or instructions to the jury, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.