# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1639

———————

United States of America,

            Plaintiff-Appellee,

v.

Todd Eric Hagan,

            Defendant-Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the Southern
\* District of Iowa.
\*
\*
\*
\*

———————

Submitted: November 15, 2004
Filed: July 7, 2005

———————

Before SMITH, LAY, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Todd Eric Hagan was convicted of one count of attempting to manufacture a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and one count of creating a substantial harm while manufacturing methamphetamine in violation of 21 U.S.C. § 858. The district court[1] sentenced him to 292 months and 120 months imprisonment, respectively, to run concurrently. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

———————

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

# I.

Hagan argues that the district court's *Allen* charge impermissibly coerced a guilty verdict. A challenged jury instruction is reviewed for abuse of discretion. *United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003). An *Allen* charge, a supplemental jury instruction, advises deadlocked jurors to reconsider their positions. *Id.* Supplemental jury instructions are permissible, so long as they are not coercive. *United States v. Washington*, 255 F.3d 483, 485 (8th Cir. 2001). "Jury coercion is determined by (1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion." *Walrath*, 324 F.3d at 970.

Here, the court issued an *Allen* charge in the form of Model Jury Instruction 10.02, after 11 hours of deliberation. The jury first wrote the judge, "unable to reach unanimous verdict" after 8 hours of deliberation. The court responded, "Please continue your deliberations." Two and a half hours later, at the end of the day, the jury advised the court:

> [I]t doesn't appear we're going to be able to reach a unanimous decision, and I mean, I think we could stay here all night, probably tomorrow, but I don't think it's going to change. And, you know, as far as staying anymore tonight, I think pretty much everybody thinks that we're not going to change our verdict tonight.

The court directed the jury to return the next morning, which the court began by giving the *Allen* charge.

Based on the above four-part test, the district court did not abuse its discretion. First, Model Instruction 10.02 is approved by this court as to content. *See United States v. Thomas*, 946 F.2d 73, 76 (8th Cir. 1991). Second, the jury deliberated for approximately four hours after the instruction was given, which raises no inference

of coercion. *See **United States v. Whatley***, 133 F.3d 601, 605 (8th Cir. 1998) (the fact that the jury deliberated for four hours after the district court gave the *Allen* charge suggests that the jurors carefully considered the case). Third, although the jury here deliberated in total over 15 hours for a five-hour, non-complex trial, "the total deliberation time is not dispositive in analyzing the effect of an Allen charge." *See **United States v. Glauning***, 211 F.3d 1085, 1087 (8th Cir. 2000). Fourth, there is no indicia of coercion in the record.

In addition to objecting to the *Allen* charge, Hagan also moved for a mistrial and a new trial. A district court's denial of mistrial or new trial is reviewed for abuse of discretion. *See **United States v. Johnston***, 353 F.3d 617, 622 (8th Cir. 2003); ***United States v. Placensia***, 352 F.3d 1157, 1162 (8th Cir. 2003). The district court did not abuse its discretion in issuing the *Allen* charge, or in denying the motions.

## II.

Hagan contends that the evidence was insufficient to sustain his conviction, as he was only the driver of a vehicle that had other passengers and items related to methamphetamine.

"In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." ***United States v. Collins***, 340 F.3d 672, 678 (8th Cir. 2003). Reversal is justified only if no reasonable jury could have found the accused guilty beyond a reasonable doubt. *See **id.***

The evidence supported the police officers' testimony that Hagan was driving a "rolling meth lab." Officers testified that the components to manufacture methamphetamine were in the van that Hagan was driving – a heater, scales, salt,

sulfuric acid, a cylinder of anhydrous ammonia, a cooler of ether, aquarium tubing, coffee filters, funnels, drain cleaner, and lids modified for tubing. Officers testified that ether, ground-powder pseudoephedrine, and peeled lithium batteries were thrown from the van immediately before it stopped. The jury was entitled to consider the facts that Hagan – the driver – did not stop or even slacken speed for four to five minutes after police activated emergency lights, while items were being thrown from the van and the occupants were moving around. (The jury saw a videotape of the chase.) Also, the jury could rely on Hagan's flight from police once the van stopped. A (stipulated) laboratory report – supported by expert testimony – indicated the items found were consistent with the lithium ammonia reduction method of manufacturing methamphetamine, with a projected yield between 12 and 40 grams. Moreover, the expert testified that the evidence shows several substantial steps in manufacturing.

The jury had more than Hagan's mere presence near methamphetamine. *Compare* **United States v. Fitz**, 317 F.3d 878 (8th Cir. 2003); **United States v. Cruz**, 285 F.3d 692 (8th Cir. 2002). The various substances found in, and thrown from, the van far exceed the one meth component present in *United States v. Weston*, 4 F.3d 672, 675 (8th Cir. 1993).

In his case, Hagan presented statements he made to police officers that he was only in the van because he was taking an individual for a test drive. He also told police that he was helping an individual move by driving the van, and could not pull over when signaled by police because the individual pointed a gun at him (no weapons were discovered at the scene or in the van). However, Hagan could not identify the individual (who apparently jumped from the van while it was stopping). The evidence was sufficient for the jury to reasonably conclude that Hagan was attempting to manufacture methamphetamine.

With respect to Hagan's conviction for creating a substantial risk of harm to human life, the government offered expert testimony that the combination of the

chemicals in a closed container, like Hagan's van, is highly explosive and dangerous, "a bomb going down the highway." The government's expert also testified to the danger of inhaling ground-powder pseudoephedrine or anhydrous ammonia. The evidence was sufficient to sustain Hagan's convictions.

## III.

Hagan asserts on appeal that the district court violated *Blakely v. Washington* in sentencing him to 292 months imprisonment, because his sentence was based upon facts not in the jury verdict. He asserts that he was convicted of attempted manufacture of at least 5 grams of methamphetamine, but his sentence was based on at least 35 grams of methamphetamine.

The district court relied on a stipulation at trial and the evidence in the record. The parties stipulated to an amount of "at least 12-40 grams." The district court found ample support in the record that Hagan attempted to manufacture over 35 grams of methamphetamine. Because the laboratory report showed a potential yield of 44 grams of meth, the district court did not clearly err in this finding. *See **United States v. Killgo***, 397 F.3d 628, 631 (8th Cir. 2005).

The district court, however, made this finding applying the Sentencing Guidelines as mandatory. In *United States v. Booker*, __ U.S. __, 125 S. Ct. 738, 757 (2005), the Supreme Court held that mandatory application of the guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

To preserve a *Booker* error, a defendant below must argue *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional. *See **United States v. Pirani***, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Here, Hagan did not preserve the error. Hagan's objection at sentencing to the sufficiency of the government's evidence of

-5-

drug quantity is not sufficient to preserve a claim of *Booker* error on appeal. *Id.* at 550.

Â Â Â Â Â Â Â Â *Booker* error not preserved at trial is reviewed for plain error. *Id.* To establish plain error there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-36 (1993). Hagan has the burden to prove plain error. *Id.* at 734.

Â Â Â Â Â Â Â Â The first two elements are satisfied. *See Pirani*, 406 F.3d at 550. The third element, "to affect substantial rights," means the error must be prejudicial. *See Olano*, 507 U.S. at 734. To show prejudice, Hagan must demonstrate a reasonable probability that he would have received a more favorable sentence. *See Pirani*, 406 F.3d at 551. The record has no indication that the district court would have sentenced Hagan to a lesser sentence if it realized that the guidelines were not binding, but must only be consulted and taken into account when sentencing. The fact that the court sentenced Hagan at the bottom of the sentencing range, without more, is insufficient to demonstrate prejudice. *See id.* at 553. Hagan fails to demonstrate that his sentence was plain error.

## IV.

Â Â Â Â Â Â Â Â The district court refused a role-reduction decrease under U.S.S.G. § 3B1.2. Hagan claims the evidence established that he was only the driver of the van, and nothing more than a minor participant, a minimal participant, or something in between the two.

Â Â Â Â Â Â Â Â The defendant's offense level is decreased by four levels for a minimal participant, by two levels for a minor participant, and by three levels if the defendant's

conduct falls between that of a minor or minimal participant. **U.S.S.G. § 3B1.2**. The defendant has the burden of proof to show eligibility for a mitigating role reduction. *See **United States v. Brubaker***, 362 F.3d 1068, 1071 (8th Cir. 2004).

Under *Booker*, the district court must consult the guidelines. 125 S. Ct. at 767. In taking them into account when sentencing, the court must calculate a guidelines sentence, before determining the final sentence. *See **United States v. Haack***, 403 F.3d 997, 1003 (8th Cir. 2005). A district court's factual findings in calculating a guidelines sentence are reviewed for clear error. *See **Killgo***, 397 F.3d at 631.

The district court considered all the evidence before the jury – set out in Part II above – detailing Hagan's role in his offenses. The court even credited, for purposes of sentencing, Hagan's statements that the passenger may well have been holding a gun on Hagan, but concluded this gave the passenger a greater role only in not stopping the van, and said nothing about the roles in the charged offenses of manufacturing meth and creating substantial risk to human life. The court concluded that Hagan failed in his burden of showing a minor or minimal role in the charged offenses. The district court did not clearly err in refusing him a role reduction.

Hagan's convictions and sentence are affirmed.

_____